UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Susan Parsley,

      Plaintiff,

-v-                                   Case No. 2:05-cv-00229
                                             Judge Michael H. Watson

The City of Columbus, Ohio
Department of Public Safety,

      Defendant.


## OPINION AND ORDER

Plaintiff asserts defendant interfered with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA") by requiring her to recertify her need for intermittent leave every thirty days, and by terminating her employment. Plaintiff also brings state law claims for disability discrimination and retaliation.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court denies plaintiff's summary judgment motion and grants defendant's summary judgment motion in part and denies it in part.

### I. Facts

Plaintiff is an individual citizen of the State of Ohio. Defendant is a political subdivision of the State of Ohio, and an employer within the meaning of the FMLA. Plaintiff worked as a Communications Technician in the Communications Bureau, Division of Police, within defendant's Department of Public Safety until defendant

terminated her employment effective December 27, 2004.

## A. FMLA Leave

Defendant calculates FMLA leave using the "rolling 12-month period measured backward" method. Hence, every time an employee takes FMLA leave, defendant determines any balance of the FMLA-required twelve weeks that have not been used during the preceding twelve months.

David Edmundson of the Employee Benefits Unit ("EBU") was responsible for administering FMLA leave. Edmundson reported to Nichole Brandon, Manager of Human Resources.

The leave process is commenced when an employee calls the Division Information Desk. The Information Desk then records on a sick leave request form the reason the employee is calling off. The sick leave request form is then routed to Edmundson, who decides whether the leave sought is FMLA qualified. After an absence of three days, Edmundson sends the employee a packet of information with FMLA certification forms enclosed. The forms include a "Request for FMLA Leave" to be completed by the employee, and an "FMLA Medical Certification" form to be completed by the employee's health care provider. The employee sends the completed forms to Edmundson, who then decides whether the leave is qualified for the FMLA.

After the employee returns from leave, Edmundson notes the return and the qualification or non-qualification for FMLA on the request form, and sends the request form to Payroll. Upon receiving the request form, Payroll notes the hours used, whether sick, vacation, comp time, or other. Payroll then returns the form to EBU, which would charge the hours to the appropriate category.

Employees accrue comp time by working overtime. Employees can elect to have any comp time put in a bank to use for later leave, or to be paid.

Under the AFSCME collective bargaining agreement, there is a fifteen-day waiting period from the date of disability and the beginning of disability benefits. Employees must use FMLA leave or comp time to cover the waiting period.

### B. Recertifiication

Plaintiff was diagnosed with a herniated nucleus pulposus, also referred to as a herniated disk, in 1999. Plaintiff first applied for FMLA leave in December 2001. In January 2002, plaintiff's physician, Phillip Stern, M.D., certified her as having a permanent, lifetime serious health condition, thereby qualifying her for intermittent leave under the FMLA.

Plaintiff "marked off" sick forty-seven times from January 2002 through November 2002. The periods of time plaintiff marked off varied from about three hours to several days. Plaintiff's supervisor, Ruth Crabtree, believed plaintiff's mark offs were suspicious, and initiated an investigation. As a result, Brandon wrote to Edmundson on May 16, 2003, directing him to require plaintiff to recertify her health condition every thirty days. Edmundson followed Brandon's directive.

### C. Plaintiff's Termination

On November 6, 2003, plaintiff requested and was approved for FMLA leave for an upcoming major abdominal surgery. Her surgery was originally scheduled for November 17, 2003, but was delayed until November 24, 2003. Due to the fifteen-day waiting period, plaintiff's paid disability leave did not begin until December 8, 2003. Plaintiff was therefore obliged to cover the period of November 24, 2003 to December

8, 2003 with accrued sick leave or vacation leave for FMLA leave under § 24.7(H) of the AFSCME collective bargaining agreement. Plaintiff was released to return to work on April 12, 2004.

On May 8, 2004, plaintiff again marked off because she was experiencing severe back pain. Plaintiff asserts that Edmundson told her that she had enough remaining FMLA leave to cover her absence. Defendant avers that as of May 8, 2004, plaintiff had exhausted her FMLA leave. Plaintiff also maintains that defendant failed to provide her timely notice as to whether her leave was FMLA-qualified.

Defendant states that while plaintiff was off work, it determined that she did not have FMLA leave to cover her absence, and concluded that plaintiff was absent without leave ("AWOL") for a period of 66.5 hours, or just over eight days. Being AWOL for more than five consecutive days is grounds for termination. Under the AFSCME agreement, defendant did not commence disciplinary proceedings until after plaintiff returned to work on November 19, 2004. After a disciplinary hearing, defendant terminated plaintiff's employment effective December 27, 2004.

Plaintiff filed this action on March 14, 2005, asserting the following claims for relief:

1. Defendant required plaintiff to recertify her lifetime serious health condition for intermittent leave every thirty days in violation of the FMLA.

2. Defendant failed to credit plaintiff 66.5 hours of FMLA leave time and terminated her employment in violation of the FMLA.

3. Defendant discriminated against plaintiff because of her disability when it, *inter alia,* denied her unpaid leave in May 2004 and terminated her

employment in violation of Ohio Rev. Code Chapter 4112.

4.     Defendant retaliated against plaintiff for engaging in the protected activity

of opposing defendant's discriminatory treatment of her in violation of

Ohio Revised Code Chapter 4112.

Plaintiff moves for summary judgment in her favor on her FMLA claims.

Defendant moves for summary judgment on all of plaintiff's claims, arguing that

plaintiff's FMLA claims are without merit as a matter of law, and that the Court should

not exercise supplemental jurisdiction over plaintiff's state law claims following

dismissal of plaintiff's FMLA claims.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c),

which provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment

is appropriate, however, if the opposing party fails to make a showing sufficient to

establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. Discussion

#### A. Recertification

Plaintiff and defendant both move for summary judgment on plaintiff's claim that defendant violated the FMLA by requiring plaintiff to recertify every thirty days. The parties base their arguments on the FMLA implementing regulations. Plaintiff contends that requiring recertification every thirty days violates 29 C.F.R. § 825.308(c)(1). Defendant maintains that its recertification requirement was lawful under 29 C.F.R. §§ 825.114(a) and 825.308(a).

The FMLA provides an employer "may require that a request for leave . . . be supported by a certification issued by the health care provider. . . ." 29 U.S.C. § 2613(a). The FMLA further states, "[t]he employer may require that the eligible employee obtain subsequent recertifications on a reasonable basis." 29 U.S.C. § 2613(e). The statute does not define "reasonable basis." The implementing regulations, however, include a section titled, "Under what circumstances may an employer request recertification of medical conditions?" 29 C.F.R. § 825.308. Section 825.308 provides in pertinent part as follows:

> (a) For pregnancy, chronic, or permanent/long-term conditions under continuing supervision of a health care provider (as defined in § 825.114(a)(2)(ii), (iii) or (iv)), an employer may request recertification no

more often than every 30 days and only in connection with an absence by the employee, unless:

(1) Circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of absences, the severity of the condition, complications); or

(2) The employer receives information that casts doubt upon the employee's stated reason for the absence.

(b)(1) If the minimum duration of the period of incapacity specified on a certification furnished by the health care provider is more than 30 days, the employer may not request recertification until that minimum duration has passed unless one of the conditions set forth in paragraph (c)(1), (2) or (3) of this section is met.

(2) For FMLA leave taken intermittently or on a reduced leave schedule basis, the employer may not request recertification in less than the minimum period specified on the certification as necessary for such leave (including treatment) unless one of the conditions set forth in paragraph (c)(1), (2) or (3) of this section is met.

(c) For circumstances not covered by paragraphs (a) or (b) of this section, an employer may request recertification at any reasonable interval, but not more often than every 30 days, unless:

(1) The employee requests an extension of leave;

(2) Circumstances described by the previous certification have changed significantly (e.g., the duration of the illness, the nature of the illness, complications); or

(3) The employer receives information that casts doubt upon the continuing validity of the certification.

Plaintiff apparently relies on a prior version of § 825.308(c)(1)[1], arguing that requiring

recertification was improper because defendant had not received any information

casting doubt upon the continuing validity of the certification. Defendant contends that

§ 825.308(c) does not apply; rather, this case is governed by § 825.308(a) because

---

[1] The above quoted version of the regulation is currently in effect and was in effect in 2003-04.

plaintiff's health condition is "chronic, or permanent/long-term." If defendant is correct, defendant was entitled to require recertification every thirty days.

Plaintiff maintains that § 825.308(a) is inapplicable because, under § 825.308(b), plaintiff's health care provider has specified that plaintiff's condition has a "minimum duration," namely, "lifetime." The Court rejects plaintiff's argument. First, § 825.308(b) does not refer to the minimum duration of the health condition. Instead, it pertains to the "period of incapacity." Moreover, common sense dictates that the minimum duration of a lifetime condition cannot be ascertained because there is no certainty as to how long any individual will live.

Furthermore, this case fits squarely within the provisions of § 825.308(a), which concerns "chronic, or permanent/long-term conditions." The regulations define "chronic serious health condition" as one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(iii). Plaintiff's lifetime back condition satisfies all three elements. Her condition was properly treated as "chronic." Defendant was therefore entitled to require recertification of plaintiff's condition every thirty days under 29 C.F.R. § 825.308(a).

For the above reasons, the Court finds as a matter of law that defendant did not violate the FMLA by requiring plaintiff to recertify her health condition every thirty days.

For this reason, defendant is entitled to summary judgment in its favor with respect to plaintiff's first claim for relief.

### B. Termination

In her second claim for relief, plaintiff asserts that defendant interfered with her FMLA rights when it terminated her employment.  Under the FMLA, qualifying employees are entitled to twelve weeks of unpaid leave each year to be used in cases of the employee's serious health condition, the serious health condition of an immediate family member, the birth of a son or daughter of the employee, or the placement of a son or daughter with the employee for adoption or foster care.  29 U.S.C. § 2612(a)(1). Congress enacted the FMLA to address, *inter alia,* "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4).  The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(1).  To prevail on an FMLA interference claim, a plaintiff must prove the following elements:

1.    she is an eligible employee;

2.    the defendant is an employer within the meaning of the FMLA;

3.    the employee is entitled to leave under the FMLA;

4.    the employee gave the employer notice of her intention to take leave; and

5.    the employer denied the employee benefits to which she was entitled under the FMLA.

*Cavin v. Honda of America Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir. 2003).

Defendant argues that plaintiff cannot establish the third and fifth elements of her

interference claim. That is, defendant contends plaintiff is unable to show that she was entitled to leave under the FMLA or that defendant denied her FMLA benefits to which she was entitled. Both arguments stem from defendant's assertion that plaintiff had exhausted her twelve weeks of FMLA leave as of May 8, 2004.

## 1. Exhaustion of FMLA leave

Plaintiff avers that she had sufficient remaining FMLA time to cover her absence in May 2004; defendant maintains she did not. Under *Cavin,* plaintiff bears the burden of proving that she was eligible for and entitled to FMLA leave. 346 F.3d at 719; *see also Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir.1997)(employee bears the burden of proving that he was entitled to FMLA leave). Notably, neither side in this conflict attempts to set forth a comprehensive, comprehensible hour-by-hour accounting of plaintiff's FMLA leave.

Initially, plaintiff asserts that plaintiff had FMLA leave remaining on May 8, 2004 because defendant's leave system does not count FMLA leave and disability leave as running concurrently. In support of this argument, plaintiff refers to differences between the collective bargaining agreement covering plaintiff and the agreement covering a different category of employees. Defendants point to two specific provisions in the collective bargaining agreement that provide disability leave and FMLA leave run concurrently.

Plaintiff's employment is governed by a collective bargaining agreement between defendant and the American Federation of State County and Municipal Employees Ohio Council 8 Local 1632 ("AFSCME"). The AFSCME agreement provides as follows in § 24.7(L):

> Leaves granted under any other provision of this Contract or under State law, whether paid or unpaid, including sick, disability and injury leave as provided in Articles 20, 21 and 22 respectively, for purposes which are covered under the Family Medical Leave Act, shall be charged as FMLA leave and shall be subject to the twelve (12) week per year limitation for the length of an FMLA leave.

The AFSCME agreement further provides in § 21.7:

> Any disability leave which is granted for reasons permissible under an FMLA leave shall be subject to the twelve (12) week per year limitation for the length of FMLA leave.

Edmundson confirmed that when an employee is on short-term disability leave, it counts as FMLA leave. Edmundson Dep. at 76.

Plaintiff's theory that disability leave and FMLA leave do not run concurrently is based upon a comparison of a provision in the AFSCME contract with an analogous provision in the CMAGE collective bargaining agreement. Section 24.7(H) of the AFSCME agreement provides in part, "[a]ll accrued sick leave benefits must be utilized for any FMLA leave taken for any reason which qualifies for sick leave. . . ." Section 14.9(H) of the CMAGE agreement provides in part, "[a]ll accrued sick leave benefits, and disability benefits when applicable, must be utilized for any FMLA leave taken for any FMLA-qualifying reason." In addition, plaintiff asserts that in practice defendant did not count disability leave as FMLA leave.

The Court finds that the clear language of the AFSCME agreement unambiguously provides that disability leave and FMLA leave run concurrently. Extrinsic evidence such as the CMAGE agreement is therefore not admissible to show otherwise. *See S.R.L. v. PCC Airfoils, L.C.C.,* 448 F.3d 899, 904 (6th Cir. 2006); *Haemmerle v. Franklin Life Ins. Co.,* 25 Fed. Appx. 359, 361-62 (6th Cir. 2002).

Moreover, plaintiff has not submitted any evidence showing that in practice defendant did not count disability leave as FMLA leave. For these reasons, the Court finds as a matter of law that disability leave and FMLA leave run concurrently for purposes of calculating the amount of FMLA leave plaintiff used.

Plaintiff additionally argues that Payroll's leave without pay report ("LWOP")(Pl. Ex. 22), shows plaintiff had the required 66.5 hours of FMLA leave remaining as of May 8, 2004. Plaintiff refers to the following entries in the LWOP report:

| 12/6/03 | Fmla Lwop charge in error. Awaiting Disability. Manual check issued pe 12/6 using comp. Py to be next pay |
| 12/20/03 | Py Adj -63.5 Fmla lwop. Manual check issued pe 12/6 using comp time before disability |
| 5/22/04 | 66.5 hrs FMLA LWOP 5/10-5/22/04 no time |
| 7/17/04 | 66.5 Fmla Lwop charge in error s/b 66.50 Awol from pe 6/5 |

When asked, "somebody said that she's got 63.5 hours of FMLA leave without pay we're charging her for, but then they said, no, we're going to give her comp., she had 65.5 hours of comp time to use for that, which she did?", Payroll employee Melissa Dorn answered, "Yes." Dorn Dep. At 23.

Defendant points out that the LWOP report was neither created nor maintained by Edmunson, who kept track of all FMLA leave by a separate system in the EBU. Moreover, the LWOP does not even purport to show all FMLA leave plaintiff used. Rather, the LWOP report shows only *unpaid* leave. Regardless, the LWOP report was created using information from the same sources used by Edmundson in EBU, namely, the request forms. The LWOP report indicates that at one point in time, plaintiff was credited with 66.5 hour of FMLA time, which happens to have been exactly the amount

of time she was found to be AWOL.

In addition, plaintiff purports to corroborate the LWOP report with Edmunson's alleged representation to plaintiff in May 2004 that plaintiff had sufficient FMLA leave to cover her absence. *See* Parsley Dep. At 27. Defendant dismissively characterizes Parsley's testimony on this subject as "dubious" and "unsubstantiated." Defendant, however, has not drawn the Court's attention to any statement by Edmundson denying that he made the subject representation. Moreover, as defendant is well aware, the Court does not weigh evidence or make credibility judgments in ruling on a motion for summary judgment. In addition, defendant mistakenly assumes that plaintiff offers the statement only in support of her equitable estoppel argument, discussed *infra.* It is clear, however, that plaintiff also offers the statement for the truth of the matter asserted, i.e., as direct evidence that plaintiff did, in fact, have sufficient FMLA leave remaining to cover her absence beginning May 8, 2004. *See* Pl. Mem. In Op. (Doc. 28) at 7.

Defendant relies on a list of plaintiff's FMLA mark offs as set forth in a printout from EBU showing all of plaintiff's markoffs from January 1, 2001 through December 27, 2004. Guyton Aff. Ex. 1. Edmundson maintains he relied on this information in concluding that plaintiff had exhausted her FMLA leave by May 2004. The EBU printout, however, is not an hour-by-hour accounting. Specifically, the critical entry for November 24, 2003 indicates plaintiff used 278.8 hours of FMLA leave during her absence for abdominal surgery. It does not, however, show how Edmundson arrived at that figure. Edmundson's testimony on this subject is far from transparent. *See* Edmundson Dep. at 73-76.

Viewed in the light most favorable to plaintiff, the LWOP report and Edmundson's alleged statement that plaintiff had sufficient FMLA leave to cover her absence give rise to a genuine issue of material fact as to whether plaintiff was entitled to FMLA leave in May 2004. Likewise, viewed in the light most favorable to defendant, the EBU printout and Edmundson's testimony give rise to a genuine issue of material fact as to whether plaintiff had FMLA leave remaining in May 2004.

For the above reasons, the Court finds that neither party is entitled to summary judgment on plaintiff's FMLA interference claim.

### 2. Notice and equitable estoppel

Plaintiff asserts that even if she did not have any FMLA leave remaining as of May 8, 2004, she may nevertheless prevail on her FMLA interference claim because defendant failed to provide her notice within two business days as to whether the requested leave was designated FMLA leave as required 29 C.F.R. §§ 825.208(a) and 825.700. In addition, plaintiff maintains that defendant is equitably estopped from arguing that plaintiff's FMLA leave was exhausted as of May 8, 2004 because plaintiff detrimentally relied on Edmundson's alleged representation that she "had hours to take FMLA." Parsley Dep. at 27.

Defendant contends that both of these arguments were rejected by the U.S. Supreme Court in *Ragsdale v. Wolverine,* 535 U.S. 81 (2002). In *Ragsdale,* the plaintiff requested and received a one-month leave of absence for surgery and radiation therapy for Hodgkin's disease. The plaintiff then asked for a thirty-day extension at the end of each of the seven months that followed. In all, the plaintiff missed thirty weeks of work. The defendant held open the plaintiff's position, maintained her health

insurance and paid her premiums during the first six months of her leave. The defendant did not, however, notify the plaintiff that twelve weeks of her absence would count as her FMLA leave. When the plaintiff sought her seventh thirty-day extension, the defendant advised her that she had exhausted her seven months of leave under the company plan. The plaintiff's condition persisted, so she requested more leave or the opportunity to work part-time. The defendant declined, and terminated her employment. The plaintiff then brought suit in district court, arguing that the defendant violated 29 C.F.R. § 825.700 (2001), which required an employer to grant an employee an additional twelve weeks of FMLA leave if the employer failed to give the employee notice that an absence is designated as FMLA leave.

The Court in *Ragsdale* observed that the FMLA provides no relief unless the employee was prejudiced by the violation. 535 U.S. at 89 (citing 29 U.S.C. § 2617). The Court struck down the regulation, finding that the regulation was "invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id.* at 90. The plaintiff in *Ragsdale* was unable to show that if she had received the notice, she would have taken less leave or intermittent leave. In other words, she could not show she was prejudiced by the lack of notice.

In the instant case, unlike *Ragsdale,* plaintiff offers to prove prejudice. Specifically, plaintiff avers in her affidavit that if she had known that she had exhausted her FMLA leave by May 8, 2004, she would have continued to work until she accumulated sufficient FMLA leave time to cover her absence, even if it meant coming to work in a wheelchair. Parsley Aff. ¶ 11. Defendant argues that plaintiff's assertions

concerning prejudice are "dubious" and "speculative." Defendant points out that plaintiff's May 8, 2004 leave was taken on the basis of an alleged emergency, and that plaintiff said she marked off because she could not walk and at times could not get out of bed. Once again, defendant's arguments go to weight and credibility, which are not assessed at the summary judgment phase. The Court finds that plaintiff's evidence of prejudice takes this case outside the holding of *Ragsdale.*

In addition, plaintiff argues that she may prevail against defendant under the doctrine of equitable estoppel. Defendant argues that *Ragsdale* rejected equitable estoppel. The Court in *Ragsdale,* however, did not mention or discuss the doctrine. Moreover, circuit court decisions rendered after *Ragsdale* have continued to apply equitable estoppel in FMLA interference cases. *See Slentz v. City of Republic, Mo.,* 448 F.3d 1008, 1011 (8th Cir. 2006); *Minard v. ITC Deltacom Communications, Inc.,* 447 F.3d 352, 358-59 (5th Cir. 2006); *Banks v. Armed Forces Bank,* 126 Fed. Appx. 905, 906-07 (10th Cir. 2005); *Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 493-94 (8th Cir. 2002). Furthermore, at least two district courts have concluded that application of equitable estoppel in FMLA cases does not conflict with *Ragsdale.* *Podkovich v. Glazer's Distributers of Iowa, Inc.,*      F. Supp.2d     ,      , 2006 WL 2326930, at * 29 n. 6 (Aug. 10, 2006); *Sutherland v. Goodyear Tire & Rubber Co.,*      F. Supp.2d     ,      , 2006 WL 2524038, at * 6 (D. Kan. Feb. 14, 2006). For these reasons, the Court finds that the doctrine of equitable estoppel as applied in FMLA interference cases survives *Ragsdale.*

One of the leading decisions applying equitable estoppel in the context of an FMLA interference claim is *Kosakow v. New Rochelle Radiology Assoc.,* 274 F.3d 706

(2nd Cir. 2001). In *Kosokow,* the Second Circuit based equitable estoppel on the

employers failure to post the statutorily-required notice that an employee must work

1250 hours to be eligible. *See* 274 F.3d at 722-27. The court in *Kosakow,* explained

how an otherwise ineligible employee may assert a claim under the doctrine of

equitable estoppel:

> [N]othing prevents a court from exercising its equitable powers to estop a
> party from raising a particular claim or defense. The doctrine of equitable
> estoppel is a judicial doctrine of equity which operates apart from any
> underlying statutory scheme. If all the elements of equitable estoppel are
> met, an employer may be estopped from challenging an employee's
> eligibility as a result of the employer's misconduct in failing to post the
> required notice.

274 F.3d at 724. The United States Court of Appeals for the Sixth Circuit described the

requirements for equitable estoppel as follows:

> A party triggers equitable estoppel by conduct inconsistent with a position
> later adopted that prejudices the rights of the other party who
> detrimentally relied on the prior conduct. *Heckler v. Cmty. Health Servs. of
> Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42
> (1984). A party must show:
> (1) conduct or language amounting to a representation of material fact;
> (2) awareness of true facts by the party to be estopped;
> (3) an intention on the part of the party to be estopped that the
> representation be acted on, or conduct toward the party asserting the
> estoppel such that the latter has a right to believe that the former's
> conduct is so intended;
> (4) unawareness of the true facts by the party asserting the estoppel; and
> (5) detrimental and justifiable reliance by the party asserting estoppel on
> the representation.
> *Tregoning v. American Comty. Mut. Ins. Co.,* 12 F.3d 79, 83 (6th Cir.1993)
> (citing *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1298 (6th Cir.1991)).

*Horton v. Ford Motor Co.,* 427 F.3d 382, 388 (6th Cir. 2005).

In the instant case, Edmundson allegedly represented to plaintiff that she had

sufficient remaining FMLA leave to cover her absence on May 8, 2004. Edmundson

had constructive knowledge of the true facts available to him in the EBU database.

Given that Edmundson was the employee responsible for tracking FMLA leave,

plaintiff's reliance on his alleged statement was justifiable. Lastly, plaintiff's reliance

was detrimental inasmuch as her employment was terminated. The Court finds that

plaintiff has adduced evidence sufficient to give rise to a genuine issues of material fact

on the required elements of equitable estoppel.

Although defendant does not raise the issue, plaintiff faces an additional hurdle

in the application of equitable estoppel because defendant is a governmental entity.

Estoppel cannot be used against the government on the same terms as against private

parties. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419 (1990);

*Heckler v. Community Health Servs. Of Crawford County, Inc.,* 467 U.S. 51, 60 (1984).

At a minimum, a party invoking equitable estoppel against a governmental entity must

demonstrate "affirmative misconduct" by the government in addition to the other

elements. *Fisher v. Peters,* 249 F.3d 433, 444 (6th Cir. 2001).

> "[A]ffirmative misconduct" is more than mere negligence. It is an act by
> the government that either intentionally or recklessly misleads the
> claimant. The party asserting estoppel against the government bears the
> burden of proving an intentional act by the agent of the government and
> the agent's requisite intent.

*Michigan Express, Inc. V. United States,* 374 F.3d 424, 427 (6th Cir. 2004). These

principles apply to municipalities in the employment context. *See Oritz Piñero v.*

*Rivera-Arroyo,* 84 F.3d 7, 16-17 (1st Cir. 1996). Morever, these principles apply in

FMLA cases. *Hemenway v. Albion Pub. Schools,* No. 4:05-CV-7, 2006 WL 334222, at

* 3-4 (W.D. Mich. Jan. 12, 2006).

Plaintiff asserts that Edmundson told her in May 2004 that she had sufficient

FMLA leave to cover her absence. In the circumstances this case presents, the Court cannot properly resolve the state of mind issues pertaining to "affirmative misconduct" on summary judgment. That is, the Court cannot say as a matter of law that Edmundson's alleged representation was not reckless or intentional.

For the above reasons, the Court holds that plaintiff is entitled to present her alternative theories of lack of notice and equitable estoppel to a jury.

### C. State Law Claims

Defendant's sole argument for the dismissal of plaintiff's state law claims is that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims because her federal claims are subject to dismissal. Inasmuch as plaintiff's FMLA interference claim is not subject to dismissal, the Court will exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

### V. Disposition

Based on the above, the Court **DENIES** plaintiff's summary judgment motion (Doc. 22) and **GRANTS** defendant's summary judgment motion in part and **DENIES** it in part (Doc. 27). The Court **DISMISSES** plaintiff's FMLA recertification claim. All other claims remain pending.

The Clerk shall remove Doc. 22 and Doc. 27 from the Court's pending motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**